## DES MOINES NAT. BANK v. COUNCIL BLUFFS SAVINGS BANK et al.*

(Circuit Court of Appeals, Eighth Circuit. October 16, 1906.)

No. 2,267.

**1. CHATTEL MORTGAGES—CATTLE—DESCRIPTION.**

While certain cattle were on a range in Colorado, the manager of the corporation owning them attempted to mortgage them under a description: "125 head of three year old steers owned by and in the possession of Green Cattle Co. in section 21, Township 82, Range 40, in Crawford County, Iowa." At the date of the mortgage the cattle company had no cattle in its possession on the land so described, but it had in Colorado a herd of three and four year old steers, 125 of which were afterwards shipped to Iowa to R., who subsequently became a bankrupt, and were placed on the land so described as the property of R. These steers were afterwards mortgaged by R. under a description, "125 head of three and four year dehorned steers, branded," etc., and located on section 16, township 82, range 40. *Held*, that the description in the cattle company's mortgage was insufficient to create a lien on the steers mortgaged by R.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 90–92, 96, 104.]

**2. SAME.**

The lien of the cattle company's mortgage did not attach to the 125 head of "three and four year old dehorned steers," which finally found their way to the land described in the first mortgage, under a provision thereof covering after-acquired or after-located property.

**3. LANDLORD AND TENANT—LANDLORD'S LIEN—STATE STATUTES—EFFECT.**

Code Iowa, § 2992, provides that a landlord shall have a lien for his rent on all the personal property of the tenant which has been used or kept on the rented premises during the term, not exempt from execu-

tion, for a period of one year after the year's rent or the rent of a, shorter period falls due. *Held*, that the lien under such section commences as soon as the property intended to be kept on the premises as a' part of the business of the tenant is brought on them, and attaches to the property when so brought there as security for the payment of the rent for the entire term.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, §§ 985, 988.]

4. BANKRUPTCY—LANDLORD'S LIEN.

Where, after the termination of a lease, the tenant, who subsequently became a bankrupt, retained possession under a contract to purchase the land, the landlord thereafter had no lien on the tenant's personal property for subsequently accruing rent on the nonperformance of the contract of sale, which was enforceable against the bankrupt's assets under Code Iowa, § 2992, conferring a lien on a landlord for rent accruing, etc.

Appeal from the District Court of the United States for the Southern District of Iowa.

Charles L. Powell (Jacob Sims, on the brief), for appellant.
Charles M. Harl (Emmet Tinley, on the brief), for appellee.
George H. Mayne and A. S. Hazelton, for Abner Graves, intervener.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge.   In the bankruptcy proceedings of Edward. Riddle, pending in the District Court for the Southern District of Iowa, divers claims were asserted against a fund of $7,000 resulting from the sale by the receiver in charge of the estate of 125 head of steers belonging to the bankrupt.   The Des Moines National Bank claimed $4,000 of the fund by reason of its ownership of a note secured by a chattel mortgage on the cattle for that amount executed by the Green Cattle Company on October 24, 1903.   The Council Bluffs Savings Bank claimed $4,800 of the fund by reason of its ownership of a note secured by another chattel mortgage on the cattle for that amount executed by the bankrupt on January 2, 1904.   Abner Graves claimed $600 of the fund by reason of an asserted landlord's lien for rent due from the bankrupt for use of the farm on which the cattle had been kept.   The main controversy presented by this appeal is between the national bank and the savings bank, and concerns the validity and priority of the mortgage held by the former.   The fund in dispute was realized from the sale of 125 head of three and four year old dehorned steers.   The mortgage of the savings bank accurately described them, both in respect to age, marks, and location at the time it was executed; and the legal title of the steers was on that day in the bankrupt, who executed the mortgage, so that as between the trustee of the bankrupt's estate and the savings bank the right of the latter to $4,800 with accrued interest out of the fund in question is undoubted.   Whether that right existed as against the national bank depends upon whether the mortgage held by the latter, and which was executed by the Green Cattle Company, gave it a prior lien.

Counsel for the savings bank contend that the first-mentioned mortgage was (1) void for uncertainty of description; and (2), if it was equitably valid between the parties, its record was ineffective as against

a subsequent bona fide mortgagee to impart constructive notice of any prior lien upon the particular cattle conveyed by the latter mortgage. There is no dispute that the Green Cattle Company at the time it executed the first mortgage was the owner of the cattle that were subsequently conveyed by Riddle in his mortgage to the savings bank. But the cattle company was at that time the owner of many other cattle then mingled with them. It owned both three and four year old steers; but how many of either age does not appear. They were then on the ranch of the cattle company in the state of Colorado. At that time the cattle company had what is called a "private feeding arrangement," unknown to the public, with Riddle, the bankrupt, who resided at Dow City, Crawford county, Iowa. That was, in substance, that the company should furnish the cattle and feed, and Riddle should take charge, feed, and care for them as his own until they should be prepared for market, and then that they should be sold, and the proceeds, after refunding to the cattle company the value of the cattle at the time Riddle took them and the feed consumed by them, should be equally divided between the company and Riddle. The cattle were to be treated as sold to Riddle, who was to give his note secured by mortgage to the company for their value when received by him. This note was to represent the purchase price. In this condition of things, while the cattle were on the ranch in Colorado, the company on October 24, 1903, executed its negotiable note for $4,000, payable to the order of H. S. Green, its manager, and secured the payment thereof by a mortgage which described the cattle conveyed as follows:

"The following goods and chattels owned by and in the possession of said Green Cattle Co. in section 21, township 82, range 40, in Crawford county, Iowa, 125 head of three year old steers, all branded with ⊔ on right side and to be kept on full feed on above described farm."

The note was indorsed and before its maturity sold, and, with the mortgage, delivered by Green to the national bank.

Later, in November, 1903, the cattle company shipped from its ranch in Colorado, the cattle, the sale of which produced the fund in controversy. The manager, H. S. Green, instructed the man in charge of the cattle "to send the dehorned cattle to Dow City; he had sold them to Ed Riddle." They were shipped accordingly and arrived at Dow City on November 11, 1903, and were taken from the railroad company by Riddle to what is known as the "Graves farm," in sections 21 and 22, township 82, range 40, Crawford county, Iowa, where they were kept by him until January 2, 1904, when they were weighed and taken to Riddle's feed lot on his farm in section 16, township 82, range 40, and there put and kept on full feed by Riddle until April 13, 1904, when they were shipped to Chicago and sold as the property of the bankrupt. At the time of weighing them and taking them to the Graves farm, Riddle, pursuant to the so-called feeding arrangement, executed his negotiable note for $4,800, payable to the order of H. S. Green, to represent the purchase price and secured the payment of the note by a mortgage on property described as follows:

"125 head of three and four year old dehorned steers, all branded on the right side with the reverse four and kept on full feed on section 16, township 82, range 40."

This last-mentioned note was, in the usual course of business, before its maturity indorsed and sold, and, with the mortgage, delivered to the savings bank for full value, and without any notice on its part of any prior claim to the security of the mortgage, except the notice constructively given to it by the record of the mortgage securing the national bank's note. Was that sufficient? It is the settled rule in Iowa, as elsewhere, and one with which all persons dealing in chattel mortgages in that state are presumed to be familiar, "that all of the description should be considered in determining whether or not a third person, aided by the inquiries which the instrument itself suggests, would be enabled to identify the property" (Ivins v. Hines, 45 Iowa, 73; Packers' National Bank v. Railroad Co., 114 Iowa, 621, 623, 87 N. W. 653), and that a misdescription frequently is of controlling importance (Adams v. Bank, 53 Iowa, 491, 5 N. W. 619).

In the light of these well-known rules, the description in the first mortgage must be considered. The Green Cattle Company, the mortgagor, had at the date of its first mortgage no cattle whatever in its possession on section 21. Therefore the description in the first mortgage locating them there was false, and an inquiry would have so shown. It had then in Colorado a bunch of three and four year old steers, 125 of which were afterwards shipped to Iowa and through Riddle placed on section 21 as his property. The description, therefore, of 125 three year old steers, even if the subsequent location of them by Riddle on section 21 could make in favor of the national bank, was incorrect. The bunch, finally placed on section 21, being three and four year old steers, might, all but one at least, have been four year old steers. The bunch finally placed on section 21 was composed altogether of dehorned steers, a distinguishing descriptive mark and one which any one having them for sale would doubtless employ. The first mortgage did not mention this mark at all. The cattle company at the date of the first mortgage owned "many other cattle then mingled with these" (the ones sold for the Riddle estate) "which more nearly filled the description in their" (first) "mortgage." This last-quoted part is a portion of the facts found in this case. These particulars convince us of two things: First, that the cattle company never intended to describe or convey by the first mortgage the 125 dehorned three and four year old steers conveyed by the second mortgage; and, second, that, if it did so intend, the description was so uncertain and indefinite as to the cattle conveyed that the mortgage was void ab initio for want of sufficient description to identify them. All the mortgagor's cattle, with which the ones in controversy were mingled, were branded in the same way, and the distinguishing feature which would have identified them beyond question were not employed in describing them. The only element of the description which might on inquiry have identified them was their location, and that was falsely stated. Any one possessed of all the knowledge imparted by the record of that mortgage and aided by all the inquiries which it suggested could not, in our opinion, intelligently or reasonably conclude that it covered the 125 head of three and four year old dehorned steers brought into the state three weeks after its date for Riddle, placed on section 21 by him as his own property, and subsequently removed therefrom and mortgaged by him.

We are not impressed with the argument of appellant's counsel that, as the 125 head of three and four year old dehorned steers in question finally found their way to section 21, title to them passed equitably from and after the date of their arrival there to the mortgagee under the first mortgage, as after-acquired or after-located property. That argument fails to take heed of the many other uncertainties and errors which, in our opinion, fatally and materially affect the description. It also fails to give consideration to the rights of the bankrupt which had supervened before the cattle were placed upon that section. Moreover, the principles underlying the passing of title to after-acquired property by the provisions of a mortgage presently conveying it are equitable in their nature and intended for the purpose of executing the contract as really intended by the parties. They rest on the assumption that the vendor or mortgagor has really agreed and intended to make a present transfer of certain property. Jones on Chattel Mortgages, §§ 170, 171. In this case, however, the 125 steers which finally were placed on section 21 were not the steers intended to be conveyed by the first mortgage. As already seen, the decription employed and the facts as existing, which inquiry would have made known, evince an intention not to convey them by that mortgage. H. S. Green, the manager of the cattle company, as the record shows, determined to swindle the national bank out of the money in question. The false statements, uncertainties, and ambiguities found in the description were obviously a part of a scheme deliberately devised by him to impose upon the credulity of the bank and secure its money without a critical examination by its officers concerning what, if anything, was conveyed by the mortgage. If they failed to make inquiries suggested by the description as made which would have demonstrated the true facts of the case, the loss is attributable to their own want of proper care and circumspection.

The foregoing conclusion dispenses with the necessity of considering many other questions presented in brief and argument of counsel.

The next question requiring consideration relates to the claim of Graves for a preferential lien on the fund for the rent of his farm. Section 2992 of the Code of Iowa (1897) provides as follows:

"A landlord shall have a lien for his rent upon all crops grown upon the leased premises and upon any other personal property of the tenant which has been used or kept thereon during the term and not exempt from execution, for the period of one year after a year's rent or the rent of a shorter period falls due."

The lien created by this statute commences as soon as the property intended to be kept on the premises as a part of the business of the tenant is brought upon them and attaches to the property when so brought there as security for the payment of the rent for the entire term. Martin v. Stearns, 52 Iowa, 345, 3 N. W. 92; Gilbert, Hedges & Co. v. Greenbaum, Schroder & Co., 56 Iowa, 211, 9 N. W. 182; Richardson Bros. v. Petersen, 58 Iowa, 724, 13 N. W. 63.

Graves owned a farm of about 300 acres in Crawford county, Iowa, upon which, on November 11, 1903, the cattle owned by Riddle, in the way hereinbefore stated, were placed and where they were kept until

January 2, 1904, when they were removed to Riddle's farm on section 16. Graves had, by a written lease, rented the farm to Riddle for a term expiring March 1, 1903, for the annual rental of $600. Riddle took possession under this lease, paid the rent accrued up to the date of its expiration, and remained in possession without any lease or other arrangement, except as hereinafter stated, until March, 1904. During this latter period the cattle in question had been brought upon the premises by Riddle for grazing purposes, and had remained there for about two months. Under this state of facts it seems to be conceded that Graves had the statutory lien if Riddle was during that last year a tenant of Graves. If he was not such tenant, but held possession of the premises under some other pretension, Graves had no statutory lien. Graves' remedy was strictly statutory, and the burden rested upon him to bring himself fairly within the purview of the statute. Has he succeeded in doing so? There certainly was no understanding or contract looking towards the continuance of the relationship of landlord and tenant after the first term had expired. The presumption at common law, as modified by the Iowa statutes (O'Brien v. Troxel & Bro., 76 Iowa, 760, 40 N. W. 704; Code Iowa 1897, § 2991), when possession is held by a tenant after the expiration of his lease, cannot avail the landlord in this case. Another relationship seems to have been established between them which explains the continuation of Riddle's possession. Some time before the term of the original lease expired Riddle, or Riddle and Green, made a contract with Graves for the purchase of the farm, contracting to pay him $10,500 for it, and to perform their part of the contract upon the tendering of a deed by Graves. Riddle paid the agent acting for Graves in making the contract $100 as earnest money. In Graves' amended petition of intervention he alleges:

"That prior to the said first of March, 1903, the said Riddle and Green had agreed to purchase from intervener the land in question, but long prior thereto had failed and refused to comply with said agreement on their part and had forfeited all rights thereunder."

Some time during the year in question Riddle instituted a suit in equity against Graves for the specific performance of that contract. Whether that suit has ever been tried and what its result was, if tried, does not appear in the evidence. Riddle, upon whose evidence alone the claim of Graves was submitted to the court below, says, "He was holding possession after March, 1903, pending the outcome of the suit." He is made by the insistent questioning of respective counsel to give his opinion as to whether, on the facts disclosed, he was a tenant or a purchaser. That, however, was merely his opinion on the legal effect of the facts, and is entitled to no consideration by us. The truth seems to be that he was in possession under a contract of purchase; that he was resisting the claim of Graves that he had forfeited his right under the contract by prosecuting a suit to enforce it. These things taken in connection with the fact that Graves does not testify in support of his claim or in denial of Riddle's testimony convince us that Riddle's possession was not that of a tenant, but that of one asserting a claim to ownership under his contract of purchase.

We think the learned trial judge erred in awarding $600 to Graves. We are of opinion that he was entitled to no part of it. The Des Moines National Bank, for reasons given, has also no just claim to any part of the fund. The Council Bluffs Savings Bank should be awarded the amount of its note with accrued interest, and the balance of the fund will remain as assets of the estate of the bankrupt, subject to disposition among others entitled to it in due course of administration. The decree is reversed, and the cause remanded, with instructions to proceed in harmony with this opinion.